# UNITED STATES DISTRICT COURT
## DISTRICT OF VERMONT

Scott Huminski,  )
            Plaintiff,  )
                     )   CIVIL ACTION
    v.               )
                     )
Rutland City Police  )   DOCKET NO. 1:99-cv-160
  Department, et al.,  )
            Defendants.  )

## CONSOLIDATED MEMORANDUM OF LAW
## SUPPORTING PLAINTIFF'S CONSTITUTIONAL CLAIMS

Robert Corn-Revere, Esq.
Ronald G. London, Esq.
HOGAN & HARTSON L.L.P.
555 Thirteenth Street, N.W.
Washington, D.C. 20004
(202) 637-5640

Ronald Collins, Esq.
1875 Connecticut Avenue, NW
Suite 300
Washington, DC 20009
(202) 332-9110

W.E. Kraham, Esq.
67 Main St., Ste. 12
Brattleboro, VT 05301-3908
(802) 257-5060

Counsel for Plaintiff

February 2, 2001

## Introduction

Plaintiff Scott Huminski, by his attorneys, respectfully submits this Consolidated Memorandum of Law pursuant to the briefing schedule established by this Court at the January 18, 2001 hearing.  The factual submissions and legal arguments made herein support: (1) plaintiff's oral motion that this Court reconsider its October 20, 1999 Order dismissing claims against the City and County defendants ("October 20 Order");  (2) plaintiff's opposition to the State defendants' motion to dismiss; and (3) plaintiff's motion for a preliminary injunction, filed concurrently with this Memorandum.

The events that spawned this controversy essentially are undisputed.[1] Resolution of the motions currently before the Court turns on two questions of pure law: Does the complaint allege violations of clearly established constitutional rights, and if so, are defendants entitled to either absolute or qualified immunity?  If the Court finds in plaintiff's favor on these questions, then it should deny the State's motion to dismiss, rescind its earlier dismissal order and grant plaintiff's motion for a preliminary injunction.

---

[1]     For purposes of the State defendants' motion to dismiss, the allegations of the complaint must be taken as true.  *Gumer v. Shearson, Hammill & Co.*, 516 F.2d 283, 286 (2d Cir. 1974).  However, defendants have confirmed plaintiff's factual allegations in their submissions to this Court and to the Court of Appeals. *See* Brief for Appellees Rutland County Sheriff's Department, Bennington County Sheriff's Department, R.J. Elrick, Deputy Sheriff, S. Schutt, Deputy Sheriff and Gary Forrest, Sheriff, *Huminski v. Rutland City Police Dept., et. al.*, No. 99-9329 ("County Opp."); Brief for Appellees City of Rutland, Rutland City Police Department, and Officer Robert Emerick, *Huminski v. Rutland City Police Dept., et. al.*, No. 99-9329 ("City Opp.").

## Preliminary Statement

Since May 24, 1999, Scott Huminski has been banished from the courts of Vermont because he publicly criticized a judge. Huminski, a citizen-reporter, was barred from entering the Rutland District Court grounds, including the courthouse and parking lot, by notices of trespass issued against him after he declined to comply with orders given by the Rutland County Sheriff and other court personnel to remove signs from his van. The signs expressed his opinions about Judge Nancy Corsones and criticized her legal opinions. May 24 Notices of Trespass, attached as Exhibit 1. Three days later, a new, broader trespass notice was issued without warning, expanding the scope of the notice to cover all courts within the jurisdiction of the Vermont Supreme Court. May 27 Notice of Trespass, attached as Exhibit 2.

Defendants' treatment of Huminski implicates three important and well-established First Amendment principles:

- that the government cannot punish or silence an individual because he criticizes a public official;

- that the government cannot ban speech arbitrarily in the vicinity of a courthouse; and

- that the government cannot bar an individual's access to court proceedings.

Moreover, "[i]n order to lay hands on the precise issue which this case involves, it is useful first to canvass various matters which this record does *not* present." *Cohen v. California*, 403 U.S. 15, 18 (1971) (emphasis in original). There has been no suggestion that Huminski ever engaged in:

- any form of disruptive conduct;

- any form of loud or boisterous behavior;

2

- any form of public nuisance;

- any form of picketing;

- any form of obscene or vulgar expression;

- any form of commercial expression;

- any form of threat or "fighting words";

- any form of "speech-plus" activity; or

- any form of conduct tending in any way to interfere with the administration of justice.

Nevertheless, the defendants have argued that, as a matter of law, the police may summarily bar Huminski from entering courthouses in Vermont, or their grounds, because of the message he published on his van. Although this Court agreed initially that Huminski failed to establish a violation of a clearly established federal right, it has indicated a willingness to reconsider that tentative conclusion, reached before plaintiff was represented by counsel. *See Howard Opera House Assocs. v. Urban Outfitters, Inc.*, 97 F.Supp.2d 571, 573 (D. Vt. 2000) (court has discretion to grant late-filed motion to reconsider earlier ruling); *Jusino v. Morales & Tio*, 139 F.2d 946, 947 (1st Cir. 1944) (no time limit on court's ability to reconsider a judgment dismissing complaint for failure to state a cause of action). Contrary to the suggestion of the State defendants, Rule 60 of the Federal Rules of Civil Procedure does not limit this Court's ability to reconsider a non-final order. *Transaero, Inc. v. La Fuerza Aerea Boliviana*, 99 F.3d 538, 541 (2d Cir. 1996) ("By its own terms, Rule 60(b) applies only to judgments that are final."). Finally, at the January 18 hearing the Court agreed to entertain plaintiff's motion for a preliminary injunction.

# I.   Background

## A.   Factual Background

Scott Huminski is a citizen-reporter.  For the last several years, he has attended various law enforcement proceedings in Vermont – especially judicial proceedings – and peacefully collected information, publishing his findings on signs posted around his home in Bennington, Vermont, and on placards posted on his van. Second Amended Complaint ¶ 14 ("Compl.")  Huminski has also authored complaints and correspondence to the Vermont Professional Conduct and Judicial Conduct Boards, and has distributed information on law enforcement proceedings to attorneys and government officials in Vermont.  His findings often consist of reports of judicial and attorney misconduct occurring in the course of the open proceedings Huminski attends. *Id.*

On May 24, 1999, at 7:30 a.m., Huminski parked his van at the public parking lot for the Rutland County District Court.  He affixed to the side of the van three signs measuring 45 inches by 54 inches.  One sign bore the heading "Judge Corsones: Butcher of the Constitution" (referring to Rutland District Court Judge Nancy Corsones).  It listed five reasons why Huminski believed some of Judge Corsones' rulings were unconstitutional. The other signs contained additional observations about court proceedings. *Id.* ¶ 15.

Shortly after the plaintiff parked his van and placed his signs, two representatives from the Rutland County Sheriff's Department and courthouse personnel approached Huminski and ordered him to remove the signs from his van or to move the van off state court property. *Id.* ¶ 17.   The officials gave the

command despite the fact that other vehicles in the courthouse parking lot had bumper stickers, vanity license plates or other content-bearing "signage." *Id.* ¶ 16. Huminski respectfully declined to comply with the command, noting that the signs contained protected expression under the U.S. and Vermont Constitutions. After his peaceful discussion with the officers, Huminski entered the courthouse to observe the day's proceedings. At no time did Mr. Huminski engage in any activities – while either outside or inside the courthouse – that might be characterized as disruptive. *Id.* ¶¶ 17, 20.

At around 9:30 a.m., a Rutland City police officer and representatives from the Rutland County Sheriff's Department approached Huminski in the courthouse. They asked him to accompany them to a conference room where the officers served Huminski with two notices of trespass issued by Judge Corsones, the court clerk and the local sheriffs. *Id.* ¶ 19. One notice ordered Huminski not to enter any properties controlled by the Rutland District Court and the other ordered him not to enter upon the residential property of Judge Corsones. 2/

The notices were issued pursuant to a Vermont trespass statute, which provides, in relevant part, "[a] person shall be imprisoned for not more than three months or fined not more than $500.00, or both, if, without legal authority, or the consent of the person in lawful possession, he enters or remains on any land or in any place as to which notice against trespass is given . . . ." Vt. Stat. Ann. tit. 13, §

---

2/    *See* Exhibit 2.  This trespass notice was wholly gratuitous; there was never any suggestion that Huminski ever entered upon or threatened to enter upon the residential property of Judge Corsones for any purpose.  Notably, counsel for the State admitted at the January 18 hearing that Judge Corsones personally requested service of this notice.

3705(a).   The May 24th notice contained a handwritten notation that Huminski could enter the Rutland County courthouse "only when you have written notice from the court, " or "if you have made prior arrangements or permission directly of your appearance [with] the Court manager." [sic]   *See* Exhibit 1 (multiple underscoring in original).

Although the May 24th notices were never cancelled by any official act, the Rutland District Court announced that the initial notices were withdrawn when it denied Huminski's request to vacate the notices on June 29, 1999.   Entry Regarding Motion, attached as Exhibit 3.   Whether or not the May 24th notices remained in effect, however, the court issued a far broader second notice of trespass on May 27th, this one signed by Judge M. Patricia Zimmerman of the Rutland District Court.   Not only does the May 27th notice lack the condition that would allow Huminski to attend court sessions with "written notice" or other "permission" from the court manager, it bars Huminski from entering "all lands and property under the control of the Supreme Court and the Commissioner of Buildings and General Services, including the Rutland District Court, parking areas, and lands." *See* Exhibit 2.   Inexplicably, the May 27th notice was issued even though Huminski was nowhere near the courthouse with his van, and had made no attempt to enter upon the grounds.

For most purposes, the notices of trespass effectively prevent Huminski from attending *any* civil or criminal proceedings in Vermont courts. 3/

---

3/     At the January 18 hearing and in its Opposition to Motion to Vacate, the State disputed the conclusion that the May 27 trespass notice extends to all courts in Vermont, although counsel conceded that the notice "could be read that way."   On

Nor may he directly collect and record information from proceedings held therein. In addition, Huminski may not park his van on properties controlled by the courts of Vermont, nor may he publish court-related reports from his van while situated on those public properties.  If Mr. Huminski engages in any of these activities, he is subject to immediate arrest by local law enforcement officers.

**B.     Procedural History**

On May 31, 1999, Huminski filed a *pro se* complaint in the United States District Court for the District of Vermont, alleging that defendants' actions violated 42 U.S.C. § 1983, 42 U.S.C. § 1985 and 42 U.S.C. § 1986, the First and Fourteenth Amendments to the United States Constitution, the Vermont Constitution, and constituted various torts under state common law. 4/  On July 27, 1999, the County defendants filed a Motion to Dismiss Huminski's claims, and on July 28, 1999, the City defendants filed a Motion for Judgment on the Pleadings.

On October 20, 1999, without holding a hearing, this Court granted the City and County defendants' motions to dismiss plaintiff's claims, and Huminski filed a Notice of Appeal with the United States Court of Appeals for the Second

---

November 27, 2000, at Huminski's request, Judge John P. Wesley of the Bennington County Court issued an order permitting Mr. Huminski to enter the building and grounds of that court "for any lawful purpose, which includes his attendance at any scheduled hearing in any matter pending before the Bennington Superior Court in which he is a party." *See* Entry Order, attached as Exhibit 4.

4/     The complaint named as defendants Judge Corsones, Karen Predom, Judge Zimmerman, the Rutland District Court, the State of Vermont, the Vermont State Police and an unnamed Vermont State Police Officer ("State Defendants"); Rutland County, the Rutland County Sheriff's Department, the Bennington County Sheriff's Department, Deputy Sheriff Scott Schutt, Sheriff R.J. Elrick and Sheriff Gary Forrest ("County Defendants"); and Officer Robert Emerick, the Rutland City Police and the City of Rutland ("City Defendants").

Circuit. On November 17, 1999, after the appeal was docketed, the State defendants filed a motion to dismiss Huminski's complaint for failure to state a claim. By an Order dated December 3, 1999, this motion was stayed pending the outcome of the appeal.

On July 20, 2000, the Court of Appeals dismissed the appeal for lack of jurisdiction, holding that there was no final order because the claims against the State defendants remained outstanding. *Huminski v. Rutland City Police Dept.*, 221 F.3d 357 (2d Cir. 2000). The Court noted that "Huminski's strongest claims, leaving aside such questions as Eleventh Amendment immunity, may be against the State defendants" adding that nothing "forecloses Huminski from moving in the district court for a preliminary injunction prohibiting the State defendants from barring him from State property." *Id.* at 361-362. Subsequently, plaintiff filed a consent motion with this Court for expedited review of the State's motion to dismiss. This motion was granted by the Court at the January 18 hearing, and a briefing schedule was established.

## II.   Huminski's Complaint Alleges Violations of Clearly Established Rights

### A.   The Right to Criticize Public Officials

The trespass orders plainly violated Huminski's First and Fourteenth Amendment rights. The only justification ever put forward for banishing Huminski from the Rutland County courthouse and from other Vermont courts is that he posted signs on his van that were sharply critical of a public official. The motivations underlying this action are suspect, since it has since been revealed that State officials believe Mr. Huminski to be "obstreperous." The County defendants

8

represented to the Court of Appeals that Huminski's "mere presence" in court would constitute "a continuing protest against Judge Corsones." County Opp. at 24.

The government's actions in this case are fundamentally antithetical to core First Amendment values. Appellants' retaliation against Huminski's expressive activities plainly violated his well-established right to speak out about government officials. As the Supreme Court made clear in *Mills v. Alabama*, 384 U.S. 214, 218-219 (1966):

> Whatever differences may exist about interpretations of the First Amendment, there is practically universal agreement that a major purpose of that Amendment was to protect the free discussion of governmental affairs. This of course includes discussions of candidates, structures and forms of government, the manner in which government is operated or should be operated, and all such matters relating to political processes.

Such protected speech "'may well include vehement, caustic, and sometimes unpleasantly sharp attacks on government and public officials.'" *Garrison v. Louisiana*, 379 U.S. 64, 75 (1964) (quoting *New York Times Co. v. Sullivan*, 376 U.S. 254, 270 (1964)). Difficult as it may be in practice, "a function of free speech under our system of government is to invite dispute," and it "may indeed best serve its high purpose when it induces a condition of unrest, creates dissatisfaction with conditions as they are, or even stirs people to anger." *Terminiello v. Chicago*, 337 U.S. 1, 4 (1949).

These indisputable principles apply as fully to speech that is critical of judges as to speech concerning other branches of government. In *Garrison*, for example, the Supreme Court struck down a criminal defamation conviction based on statements that a number of local judges had impeded law enforcement efforts

9

through their "inefficiency, laziness, and excessive vacations" and that the judges might have been influenced by racketeers. 379 U.S. at 65-66. The Court stressed that such statements "must be protected if the freedoms of expression are to have the 'breathing space' that they 'need . . . to survive.'" *Id.* at 74 (quoting *New York Times Co.*, 376 U.S. at 271-272). Similarly, it has long been the law that courts cannot use their contempt power to punish critical commentary about judges or their decisions absent a *bona fide* and compelling need. *Bridges v. California*, 314 U.S. 252, 270-271 (1941) ("an enforced silence, however limited, solely in the name of preserving the dignity of the bench, would probably engender resentment, suspicion, and contempt much more than it would enhance respect").

Viewed in the context of this black letter law, Huminski's description of Judge Corsones as a "Butcher of the Constitution" and his critique of her decisions falls far short of speech that may constitutionally be restricted. As these cases make clear, "the substantive evil [that the state seeks to prevent] must be extremely serious and the degree of imminence extremely high before utterances can be punished." *Id.* at 263. Moreover, to whatever extent defendants question whether silencing Huminski may be considered "retaliation" for his views, or if his message was sufficiently "disruptive" to warrant such an extreme reaction, such allegations preclude dismissal under Rule 12(b)(6). *E.g.*, *Posr v. Court Officer Shield #207*, 180 F.3d 409, 415-416 (2d Cir. 1999) (factual findings are needed to determine whether arrest of an individual inside a courthouse was based on speech critical of court officer, since allegation goes to "a matter of clearly established constitutional law").

**B.      Free Expression in the Vicinity of a Courthouse**

The Supreme Court has made it abundantly clear that the government cannot punish an individual simply for engaging in speech outside a courthouse.  In *United States v. Grace*, 461 U.S. 171 (1983), for example,  the Court invalidated a portion of a federal law that banned picketing, leafleting and other forms of expressive conduct on the Supreme Court grounds, including the sidewalks surrounding the Court. *Grace* involved the punishment of a single individual for displaying a 4' x 2.5' sign outside the Court. 5/  In finding the restriction to be unconstitutional, the Supreme Court expressly rejected the government's argument that such speech should be limited in order to avoid the impression that the judicial body might be influenced improperly by a sign in the vicinity of the courthouse.  *See also Boos v. Barry*, 485 U.S. 312, 316 (1988) (invalidating law prohibiting display within 500 feet of foreign embassies "any flag, banner, placard, or device designed or adapted to intimidate, coerce, or bring into public odium any foreign government, party, or organization").

The Supreme Court similarly has invalidated attempts to punish speech *inside* a courthouse based on nothing more than the government's belief that the speech was "offensive" and that it might provoke violence or disturb the peace. *Cohen*, 403 U.S. at 17.  Just as here, the defendant in *Cohen* "'did not engage in, nor threaten to engage in . . . any act of violence.'"  Nor did anyone else threaten to

_____

5/      Also, like here, the Court in *Grace* found "no suggestion [that the speaker's activities] in any way obstructed the sidewalks or access to the [b]uilding, threatened injury to any person or property, or in any way interfered with the orderly administration of the building or other parts of the grounds."  461 U.S. at 182.

become disruptive as a result of his speech. *Id.* at 16-17 (citation omitted). In that circumstance, the Court held that speech in the corridor of a courthouse could not be restricted based on "an 'undifferentiated fear or apprehension of [a] disturbance.'" *Id.* at 23 (quoting *Tinker v. Des Moines Indep. Cmty. Sch. Dist.*, 393 U.S. 503, 508 (1969)). It noted that a free society must accept "verbal tumult, discord, and even offensive utterance," and that "in what otherwise might seem a trifling and annoying instance of individual distasteful abuse of a privilege, these fundamental societal values are truly implicated." *Id.* at 24-25. The same principles clearly apply here.

On this issue, we respectfully request that this Court reconsider its initial conclusion, that the government may ban Huminski's access to the courthouse and its grounds under the authority of *Cox v. Louisiana*, 379 U.S. 559 (1965) ("*Cox II*"). *See* Oct. 20 Order at 4. In *Cox*, the Supreme Court upheld the constitutionality of a narrowly-focused state statute that prohibited "picket[ing]" or "parad[ing]" near a courthouse "with the intent of interfering with . . . [the] administration of justice." *Cox II*, 379 U.S. at 560 (citation omitted). However, no such statute is at issue here, and Huminski was not charged with violating any law. Nor did he engage in any activity that reasonably could be characterized as picketing or parading, or that could interfere with the administration of justice.

As a matter of law, the holding in *Cox II* is quite narrow. The Court held only that the state has the right to formulate a precisely-drawn statute to restrict courthouse picketing in order to prevent interference with the administration of justice. *Id.* at 567. However, on the facts before it, the Court

reversed the picketing convictions of those who had organized a mass demonstration, *id.* at 569-574, and in the companion case of *Cox I* held that prosecution of the *same defendants* for the *same demonstration* was unconstitutional under a more general state breach of peace statute. 6/  Where there is no precisely-drawn law aimed at protecting a compelling governmental interest, restrictions on speech cannot be upheld. 7/

In this case, Vermont has no anti-picketing statute comparable to the one upheld in *Cox II*.  More importantly, Huminski was neither charged nor convicted of violating *any* law, much less a narrowly-targeted statute.  *Compare Cox II*, 379 U.S. at 560 (appellant was tried and convicted under state law).  Instead, Huminski was summarily served with trespass notices, the effect of which was to threaten him with arrest if he returned to the courthouse for any reason.

Even if Vermont had an appropriately-tailored law, and even if Huminski had been accorded due process under it, *Cox II* would still be inapposite because there are no comparable facts here.  In *Cox*, a crowd of 2,000 people paraded and picketed 101 feet from the courthouse steps in a demonstration that ended in a melee.  *Cox I*, 379 U.S. at 545-549; *Cox II*, 379 U.S. at 564-565.  Here, by sharp contrast, a single individual published and displayed signs on a parked van in

_____

6/    *Cox v. Louisiana*, 379 U.S. 536, 545 (1965) ("*Cox I*") ("Louisiana infringed appellant's rights of free speech and free assembly by convicting him under this statute.").  Likewise, the Court invalidated appellant's conviction under a state law barring the "obstruction of public passages," finding that it had been applied in a discriminatory fashion.  *Id.* at 569.

7/    *Cox II*, 379 U.S. at 567 ("Absent an appropriately drawn and applicable statute, entirely different considerations would apply . . . .")  *See also Cohen*, 403 U.S. at 19.

a courthouse parking lot.  *Compare Grace*, 461 U.S. at 174.  In addition, Huminski entered the courthouse to attend court proceedings in a peaceful manner intending to report his observations.  Nothing in these facts can be characterized fairly as "picketing," "parading" or interfering with court business. 8/  Here, Huminski was engaging in pure speech alone.  *See Hirschkop v. Snead*, 594 F.2d 356, 372 (4th Cir. 1979) (distinguishing *Cox II* as involving expression mixed with picketing and parading, and not pure speech).  *Cf. Cohen*, 403 U.S. at 18 ("The only 'conduct' which the State sought to punish is the fact of communication.").

Defendants fare no better with their argument that Huminski may be banished from the grounds in perpetuity on the theory that the triggering event – his otherwise protected expression in the courthouse parking lot – took place in a nonpublic forum. As an initial matter, any conclusion that the parking lot is not a public forum is based on a contested question of fact (Compl. ¶ 16) that renders disposition of this case under Section 12(b)(6) inappropriate. 9/  In this regard, it is

---

8/    At its definitional core, picketing involves confrontation.  *See* Theodore J. St. Antoine, *Picketing*, in The First Amendment 299 (Leonard W. Levy, Kenneth L. Karst & Dennis J. Mahoney, eds. 1990) ("Some form of confrontation between the pickets and their intended addressees appears an essential ingredient of picketing.").

9/    Public forums may be traditional, such as sidewalks or parks, or dedicated, created by designation.  To determine whether a location is a dedicated forum, a court must look to the "policy and practice of the government to ascertain whether it intended to designate a place not traditionally open to assembly and debate as a public forum." *Cornelius v. NAACP Legal Def. & Educ. Fund, Inc.*, 473 U.S. 788, 802 (1985). The court also will consider the "nature of the property and its compatibility with expressive activity to discern the government's intent." *Id. See e.g., Warren v. Fairfax County*, 196 F.3d 186, 196 (4th Cir. 1999) (addendum to opinion) (mall surrounding courthouse is a traditional public forum "[b]ecause it is close to the seat of government and yet far enough away that activity there would cause no disruption").

14

worth noting that assistant judges of county courts in Vermont, whose duties include "the care and superintendence of county property," are elected by popular vote. Vt. Const. Ch. II § 43; Vt. Stat. Ann. tit. 24, § 131. It is reasonable to assume that the court's parking lot typically hosts various forms of "pro-judge" expression in the form of bumper stickers and other literature.

Whether or not the parking lot of the Rutland County Courthouse is a public forum, however, is beside the point. Even in a non-public forum "the exclusion of a speaker . . . must not be based on the speaker's viewpoint and must otherwise be reasonable in light of the purpose of the property." *Arkansas Educ. Television Comm'n v. Forbes*, 523 U.S. 666, 682 (1998). The interest in preserving the courthouse for its intended purpose "does not mean that the government can restrict speech in whatever way it likes." *International Soc'y for Krishna Consciousness, Inc. v. Lee*, 505 U.S. 672, 687 (1992). The viewpoint-based, blanket restrictions imposed here bear no relationship to the types of courthouse restrictions at issue in other public forum cases. 10/ *See, e.g., Housing Works, Inc. v. Safir*, 101 F.Supp.2d 163 (S.D.N.Y. 2000) (enjoining denial of permit for press conference on steps of City Hall criticizing mayor because of content-based discrimination); *Bynum v. United States Capitol Police Board*, 93 F.Supp.2d 50, 59-60 (D.D.C. 2000)

_____

10/   *E.g., Sefick v. Gardner*, 164 F.3d 370, 373 (7th Cir. 1998), *cert. denied*, 527 U.S. 1035 (1999) (The court is not required to sponsor satiric artworks – that include full sound – in its lobby, but cannot engage in viewpoint discrimination. Moreover, "the streets outside are open to scathing criticism of what happens within the courthouse."); *Ryan v. County of DuPage*, 45 F.3d 1090, 1095 (7th Cir. 1995) (the court may preclude the wearing of masks inside the courtroom as a security precaution but "[d]emonstrations outside a courthouse stand on a different footing").

(even in a nonpublic forum, police may not employ standardless procedures to restrict speech).

Most importantly, and quite apart from the other deficiencies in defendants' public forum arguments, the use of trespass notices to banish Scott Huminski from all Vermont courts and their grounds because of his speech in the parking lot is staggeringly overbroad. 11/    On its face, the trespass notice encompasses all court grounds, including sidewalks, that traditionally are considered to be public fora.  Although the County Defendants claim that issuance of trespass notices was justified because "Huminski sought to make those criticisms in a courthouse parking lot about a judge who was presiding in that court that day," County Opp. at 20, (ironically, proving the discrimination point above), that does not explain the need to ban Huminski's access to *all* Vermont courts at *all* times (unless with advance permission) whether or not he is attempting to publish his views.  *See Board of Airport Comm'rs v. Jews for Jesus, Inc.*, 482 U.S. 569, 574 (1987) (government cannot "create a virtual 'First Amendment Free Zone'" even in a non-public forum).  Nor does it explain the need for the second trespass notice, which was issued May 27, 1999 *sua sponte* by the court without any apparent reason.

---

11/    *See e.g., United States v. Gilbert*, 920 F.2d 878, 879 (11th Cir. 1991) (injunction against courthouse protester issued to uphold trespass law held to be overbroad in violation of the First Amendment); *Dorfman v. Meiszner*, 430 F.2d 558, 562 (7th Cir. 1970) (prohibition on taking photographs in courthouse environs, including plaza and surrounding sidewalks where no foreseeable noise or commotion could disturb the court's proceedings was overly broad).

The same legal conclusion follows whether or not the trespass notice applies to all courts in Vermont or just the Rutland Courthouse and its grounds – it is an overbroad, viewpoint-based restriction on Huminski's First and Fourteenth Amendment rights.

### C.      The Right of Access to Courts

Beyond the First Amendment abridgements caused by silencing Huminski's speech on May 24, 1999, the trespass orders impose a continuing deprivation of Huminski's right to attend and report on judicial proceedings. 12/ There is no question but that this is a well-established federal right.  Settled Supreme Court and Second Circuit precedents recognize a First Amendment right of the public and press to attend criminal trials and civil proceedings.  The Supreme Court has stressed that "the sure knowledge that *anyone* is free to attend gives assurance that established procedures are being followed and that deviations will become known.  Openness thus enhances both the basic fairness of the criminal trial and the appearance of fairness so essential to public confidence in the system." *Press-Enterprise Co. v. Superior Court*, 464 U.S. 501, 508 (1984) (emphasis in original) (quoting *Richmond Newspapers Inc. v. Virginia*, 448 U.S. 555, 569-71 (1980)).  *See also Westmoreland v. CBS, Inc.*, 752 F.2d 16, 23 (2d. Cir. 1984), *cert. denied*, 472 U.S. 1017 (1985) (citations omitted) (permitting the public to participate

---

12/    This conclusion is not affected by Judge Wesley's November 27 order granting access to the Bennington courthouse for certain purposes.  *See supra* note 3.  Not only does this order prove that the trespass notices have a broader reach than the State is willing to admit, but requiring Huminski to request leave of Court to exercise his rights violates the First Amendment.  *Lamont v. Postmaster Gen.*, 381 U.S. 301, 305 (1965).

in and serve as a check upon the judicial process — [is] an essential component in our structure of self government"); *Monsky v. Moraghan*, 127 F.3d 243, 246 (2d Cir. 1997), *cert. denied*, 525 U.S. 823 (1998) ("all persons enjoy a constitutional right of access").

This Court's initial reliance on *Shechter v. Comptroller*, 79 F.3d 265 (2d Cir. 1996) for the proposition that "access to courts" is not a well-established right should be reconsidered. October 20 Order at 4.   In *Shechter*, this Court acknowledged that "a constitutional right to access to the courts has long been established." *Id.* at 271 quoting *Wolff v. McDonnell*, 418 U.S. 539, 579 (1974), but it found no established right in the specific circumstances of that case.   There, the court of appeals found only that the act of providing misleading legal advice to an unincarcerated adversary is not protected by the right of access to courts. By sharp contrast, this case presents the very different question of whether the government may cut off access to a court by a citizen-reporter in retaliation for disfavored speech.   Understandably, no decisions support such sweeping censorial authority. *See, e.g., Posr*, 180 F.3d at 415-416 (expulsion from courthouse in retaliation for critical speech would violate clearly established right).

**III.    There is No Legal Support for Either Absolute or Qualified Immunity**

  **A.    There is No Basis for Qualified Immunity**

Defendants are not protected by qualified immunity because it was not objectively reasonable to believe their actions were constitutional.   Government officials that perform discretionary functions are entitled to qualified immunity *only* if their conduct does not violate clearly established constitutional rights of which

reasonable officers would have known, or if it is reasonable for them to believe that their actions do not violate such rights. *Oliveira v. Mayer*, 23 F.3d 642, 648 (2d Cir. 1994), *cert. denied*, 513 U.S. 1076 (1995). Here, dismissal of Huminski's claims on the basis of qualified immunity was clearly inappropriate where there has been *no* factfinding as to the extent of defendants' understanding of the law and the reasonableness of their actions. *Id.*; *McKelvie v. Cooper*, 190 F.3d 58, 63 (2d Cir. 1999).

Ultimately, whether any of the defendants are entitled to qualified immunity turns on the "objective reasonableness" of their actions in the context of the law that was clearly established at the time they acted. *Oliveira*, 23 F.3d at 648-49. Subjective good faith will not suffice, *Raysor v. Port Authority*, 768 F.2d 34, 40 (2d Cir. 1985), and the officers may not simply rely on the trespass orders to support the objective reasonableness of their actions. Rather, there must have been an objectively reasonable basis for believing that the notices were valid. *Malley v. Briggs*, 475 U.S. 335 (1986).

Here, where the First Amendment rights in question are matters of bedrock law, there is no legitimate basis for claiming that the defendants could form a reasonable belief in the legality of their actions. As explained above, the right to criticize public officials, including judges, has been firmly established for over half a century. *See, e.g., Bridges*, 314 U.S. at 278. The right to engage in speech in the vicinity of a courthouse (particularly where there is no specific anti-picketing law) has been well-known for more than three decades. *Cox I*, 379 U.S. at 564-65. *See also Grace*, 461 U.S. at 178-79, 183. And the right of access to judicial proceedings for purposes of reporting on such matters has been quite clear for more than two

decades. *See, e.g., Gannett Co., Inc. v. Depasquale*, 443 U.S. 368, 393 (1979); *Press Enterprise Co.*, 457 U.S. at 606. More than a quarter century ago, the Supreme Court held that the threat of arrest under trespass law for distributing handbills implicated First Amendment rights. *Steffel v. Thompson*, 415 U.S. 452, 454 (1974) (Court found First Amendment harm where petitioner ceased hand-billing due to his fear of being arrested, even though no prosecution was pending). Under the circumstances here, the defendants can make no credible claim that they honored Huminski's established rights. *See Townes v. City of New York*, 176 F.3d 138, 144 (2d Cir. 1999).

Law enforcement officers in Vermont have even less justification for asserting immunity, since a relevant decision of the state Supreme Court specifically addressed speech restrictions similar to those imposed in this case. In *State v. McHugh*, 635 A.2d 1200 (Vt. 1993), the state charged members of Operation Rescue with obstruction of justice for conducting a demonstration on a sidewalk in front of a judge's residence to protest his failure to release other members of the group on bail. Although the Court acknowledged the state's asserted interest in protecting the administration of justice, it held that the First Amendment barred prosecution. Among other things, the Court held that the use of the statute to restrict speech activities was overly broad. It found that the prosecutions could not be sustained because "[a]ll speech intended to influence judicial decisionmaking, whether by demonstration, radio call-in, letter, editorial, or otherwise, could run afoul of the standard of culpability the State advocates." *Id.* at 1201. The same considerations apply to the trespass notices here.

A relevant First Circuit decision sheds additional light on this issue. In a case involving facts quite similar to those here, the court denied an immunity claim made by police officers who had arrested a citizen-reporter on a disorderly conduct charge. 13/ In that case, the reporter who was seeking to videotape a local government meeting was arrested for "disrupting a public assembly" after he refused a police command to stop taping. As a result, he filed a pro se action that included claims under 42 U.S.C. § 1983. On appeal, the First Circuit rejected the police officer's qualified immunity defense, noting that:

> A police officer is not a law unto himself; he cannot give an order that has no colorable legal basis and then arrest a person who defies it. So it is here: because Iacobucci's activities were peaceful, not performed in derogation of any law, and done in the exercise of his First Amendment rights, [the police] lacked the authority to stop them.

*Iacobucci*, 193 F.3d at 25. Here, not only were Huminski's rights to free speech and access to the courts well-established, there was no reasonable basis for defendants to believe that they could order him to leave the courthouse and its grounds. *E.g.*, *City of Houston v. Hill*, 482 U.S. 451, 462-463 (1987) ("[t]he freedom of individuals verbally to oppose or challenge police action without thereby risking arrest is one of the principal characteristics by which we distinguish a free nation from a police state").

---

13/   *Iacobucci v. Boulter*, 193 F.3d 14 (1st Cir. 1999).   The citizen-reporter in *Iacobucci* intermittently taped meetings of local government boards for a weekly news program that he produced and broadcast on a local cable public access channel. *Id.* at 17. Like Huminski, he was not a member of the institutional press.

Finally, it is important to note that qualified immunity provides protection only against claims for damages for past wrongs. *United States v. Yonkers Bd. of Educ.*, 893 F.2d 498, 503 (2d Cir. 1990). It does not confer protection against suits for prospective injunctive or declaratory relief to remedy continuing wrongs, nor does it bar other awards, such as attorney's fees or fines, which are ancillary to the grant of prospective relief against a state. *New York City Health & Hosps. Corp. v. Perales*, 50 F.3d 129, 135 (2d Cir. 1995).

### B.    There is No Basis for Judicial or Eleventh Amendment Immunity

None of the State defendants is entitled to judicial immunity since they were not engaged in a "judicial" function when they barred Huminski from the Vermont courts. In addition, the State's claim that the defendants are protected by qualified immunity is wrong for the same reasons set forth above – the government's actions here violated well-established constitutional rights. However, even if the State could make a plausible case on the law, which it cannot, dismissal of Huminski's claims is inappropriate where, as here, there has been no factual inquiry to determine the nature of the state actors' duties. *E.g.*, *King v. Simpson*, 189 F.3d 284, 288 (2d Cir. 1999) (court must conduct some "discernible factual inquiry" in order to "determine if the duties of the defendants were judicial . . . or administrative").

The State's unadorned assertion that judges and court personnel are entitled to absolute judicial immunity is plainly inadequate on the merits. "Determining whether an official is entitled to absolute immunity [requires] a functional approach [that looks] to the particular acts or responsibilities that the

official performed." 14/ Here, the State's actions cited in the complaint – executing trespass notices as administrators of the Rutland County District Court building and grounds were entirely administrative, not judicial.  In *Amato v. Wilentz*, 753 F.Supp. 543 (D.N.J. 1990), *vacated on other grounds*, 952 F.2d 742 (3rd Cir. 1991), for example, the United States District Court for the District of New Jersey held that denial of access by a judge to state courthouse property based on the content or viewpoint of a speaker's expression is "not a judicial act performed pursuant to [an] adjudicative function," but rather, "a supremely administrative act."   753 F.Supp. at 561.  Similarly, in *Supreme Court of Virginia v. Consumers Union*, 446 U.S. 719, 736 (1980), the U.S. Supreme Court held that judges may be entitled to absolute immunity for acts taken in their judicial or legislative capacities, but they were not absolutely immune from suits for declaratory and injunctive relief when enforcing state bar rules that limit freedom of speech.

The State's additional allegation – that defendants are immune from liability because of a lack of personal involvement of the defendants – is self-evidently frivolous.  Judge Zimmerman and Court Manager Predom signed trespass notices (*see e.g.*, Exhibits 1, 2), and, as the State admitted at the January 18 hearing, Judge Corsones personally requested the issuance of trespass notices. Importantly, as the one case cited by the State attests, "a defendant who occupies a

---

14/    *King*, 189 F.3d at 287-88.  The Fifth Circuit has developed a four-part test to help determine whether judicial immunity attaches, in which the court examines whether the act (1) is a normal judicial function, (2) occurred inside the judge's courtroom or chambers, (3) came in a case pending before the judge, and (4) arose directly out of a visit to the judge in her judicial capacity.  *Cronovich v. Dunn*, 573 F.Supp. 1330, 1336 (E.D. Mich. 1983).

supervisory position may be found personally involved in the deprivation of a plaintiff's constitutionally-protected . . . interests." *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994). Here, those who signed trespass notices did so as "owner/tenant" of the properties in question. Plus, as noted above, Vermont law vests local judges with supervisory authority over courthouse grounds. 15/

Finally, defendants fail to make a case for Eleventh Amendment immunity. 16/ It is well-settled that "the Eleventh Amendment provides no shield for a state official confronted by a claim that [she] has deprived another of a federal right under the color of state law." *Hafer v. Melo*, 502 U.S. 21, 30 (1991); *see also Farricielli v. Holbrook*, 215 F.3d 241, 245 (2d Cir. 2000) ("The Eleventh Amendment does not . . . confer immunity on state officials acting in violation of federal law."). State actors do not receive immunity under the Eleventh Amendment for actions brought against them in their individual capacities. *Posr*, 180 F.3d at 414. Finally, the Eleventh Amendment does not bar suits for prospective injunctive relief. *Dwyer v. Regan*, 777 F.2d 825, 835-36 (2d Cir. 1985).

---

15/   With respect to the County defendants, local sheriffs have legal authority to "serve and execute lawful writs, warrants and processes," Vt. Stat. Ann. tit. 24, § 293, and thus have sufficient supervisory capacity to support a finding of liability under Section 1983 for such actions. *Pembaur v. City of Cincinnati*, 475 U.S. 469, 484 n.12 (1986) ("decisions with respect to law enforcement practices, over which the Sheriff is the official policymaker, would give rise to municipal liability").

16/   The State of Vermont and the Vermont State Police are not named as defendants in the Amended Complaint. Whether the District Court can be named as a defendant in an action such as this, *see Supreme Court of Virginia*, 446 U.S. at 736 ("we believe that the Virginia Court and its chief justice properly were held liable in their enforcement capacities").

## Conclusion

For the foregoing reasons, plaintiff respectfully requests that this Court: (1) reconsider its October 20, 1999 Order dismissing his claims against some defendants; (2) deny the motion to dismiss filed by the State defendants; and (3) grant Huminski's motion for a preliminary injunction.

Respectfully Submitted,

Robert Corn-Revere, Esq.
Ronald G. London, Esq.
HOGAN & HARTSON, L.L.P.
555 Thirteenth Street, NW
Washington, DC  20004
(202) 637-5600

Ronald Collins, Esq.
1875 Connecticut Avenue, NW
Suite 300
Washington, DC  20009
(202) 332-9110

W.E. Kraham, Esq.
67 Main St., Ste. 12
Brattleboro, VT 05301-3908
(802) 257-5060

Counsel for Plaintiff

February 2, 2001

**EXHIBIT 1**

**RUTLAND POLICE DEPARTMENT**
**52 Washington St., P:O. Box 969**
**Rutland VT 05702-0969**



# NOTICE AGAINST TRESPASS

TO: _Scott Humiuski_          DOB: _12-01-56_
_____
_____

You are hereby notified, pursuant to Title 13, Vermont Statutes Annotated, Section 3705 (A)(1), not to enter upon or remain upon the property that is lawfully possessed by:

Name: _Rutland District Court_
Address: _on State Street_
_Rutland, VT 05701_

Said property, which is located in the City of Rutland, State of Vermont, and consists of the following: _all in areas controlled by or utilized by the District Court including all portions thereof. Except you may enter areas which are open to the public during Notice hours from the Court_ _or if you have made prior arrangements or permission or directly your agent The Court manager._

_Signature of Owner/Tenant_  _Court manager_

## RETURN OF SERVICE

On the _24th_ day of _May_, 19_99_, at Rutland City, County of Rutland, State of Vermont, I made service of the above Notice Against Trespass upon _Scott Humiski_ by hand, delivering a copy to him/her in person.  This person was also advised that a violation of this Notice of Trespass may be statutorily punished by a term of imprisonment for not more than three months or a fine of $500.00.

_Signature of Officer_

## ACKNOWLEDGEMENT OF RECEIPT

On the _24th_ day of _May_, 19_99_, _Scott Humiski_ acknowledge receipt of a copy of this Notice Against Trespass and understand what the officer serving this order has explained to me.

_Signature of Person Receiving Trespass Order_

Case Number: 1119-92 _RC 4927_          Date of Case: _05-24-99_

_Exhibit "A"_

# RUTLAND COUNTY SHERIFF'S DEPARTMENT

## NOTICE AGAINST TRESPASS

To: _Scott Hewit_                    DOB: _12 01 59_

_207 Main St._

_Bennington VT._

You are hereby notified, pursuant to Title 13, Vermont Statutes Annotated, Section 3705(A)(1), not to enter upon or remain upon the property that is lawfully possessed by:

Owner's Name:  _Nancy Corianos_

Legal Custodian: _____

Said property, under the lawful control of the named owner/legal custodian, which is located in the Town of _Rutland/Meadow_, County of Rutland, State of Vermont, consists of the following:

_X_ All Buildings  _X_ All lands located at: _One Nicteruk h-tl 12 P 1 1_

_X_ Other: _6 Tenney Road Meadow_

_____          _05-24-99_

Signature of Owner/Legal Custodian                    Date

## RETURN OF SERVICE

On the _24_ day of _May_ , 19_99_, at _Rutland_ , County of Rutland, State of Vermont, I made service of the above Notice Against Trespass upon _____ by delivering a copy of this notice in person. This person was also advised that a violation of this Notice of Trespass may be statutorily punished by a term of imprisonment for not more than three months or a fine of $500.00 or both.

Case No: _99_ RUC _366_        _J Sheet R. 33_

                                      Signature of Deputy Sheriff

## ACKNOWLEDGMENT OF RECEIPT

On the _24_ day of _May_ , 19 _99_ , I, _Scott Hewit_ did receive a copy of this Notice Against Trespass and I understand what this order means.

_Refused to Sign_

Signature of Person Receiving Trespass Notice

Witness: _R.J. Elliot_
_Sheriff_

IA 000182

**EXHIBIT 2**

#24176

## RUTLAND COUNTY SHERIFF'S DEPARTMENT

### NOTICE AGAINST TRESPASS

RECEIVED
MAY 27 1999
BENNINGTON COUNTY
SHERIFF'S DEPT.

To: _Scott Huminski_ · DOB: _12-01-59_

    _302 Main Street_

    _Bennington VT 05201_

You are hereby notified, pursuant to Title 13, Vermont Statutes Annotated, Section 3705(A)(1), not to enter upon or remain upon the property that is lawfully possessed by:

Owner's Name: _State of Vermont - Rutland District Court_

    _92 State Street    Rutland, VT_

Legal Custodian: _Sheriff R. J. Elrick / Hon. Patricia Zimmerman_
(Designees)

Said property, under the lawful control of the named owner/legal custodian, which is located in the Town of _Rutland_. County of Rutland, State of Vermont, consists of the following:

_x_ All Buildings  _x_ All lands located at: _92 State Street, Rutland, VT_

_X_ Other: _All lands and property under the control of the Supreme Court_
    _and the Commissioner of Buildings and General Services,_
    _including the Rutland District Court, parking areas, and lands_

_Patricia Zimmerman_                                         05-27-99
Signature of Owner/Legal Custodian     _R. J. Elrick Sheriff_       Date
(Designees)

### RETURN OF SERVICE

On the _1_ day of _June_, 19_99_, at _Bennington_, County of Rutland, State of Vermont, I made service of the above Notice Against Trespass upon _Scott Huminski_ by delivering a copy of this notice in person. This person was also advised that a violation of this Notice of Trespass may be statutorily punished by a term of imprisonment for not more than three months or a fine of $500.00 or both.

Case No: _____RUC_____

                                    Signature of Deputy Sheriff

### ACKNOWLEDGMENT OF RECEIPT

On the _____ day of _____, 19 ____, I _____ did receive a copy of this Notice Against Trespass and I understand what this order means.

                    _____
                    Signature of Person Receiving Trespass Notice

Exhibit
"C"

JA 000160

**EXHIBIT 3**

Form Number 368
Motion Reaction Form

Hold for memo until: _____

## STATE OF VERMONT

| ☑ DISTRICT COURT OF VERMONT ☐ SUPERIOR COURT OF VERMONT | Unit No. | Circuit/County | Docket Number |
|---|---|---|---|
| _Scott Huminski_ | | v | _Rutland District Court_ |

### ENTRY REGARDING MOTION

Title of Motion: _Motion to vacate Trespass notice #2_

Date Motion Filed: _6/4/99_

Party Filing Motion:    ☑ Plaintiff/State _Scott Huminski_

☐ Defendant

☐ Other _____

Date Response Filed: _None_
("NONE" If None Filed )

Compliance by _____

_____ Granted

✓ Denied

_____ Scheduled for hearing on: _____   (Date)   at _____ (Time) ; Time Allotted _____

_____ Other   _This motion was date-stamped 6/4/99 in Rutland District Court, but not received by the undersigned (sitting in Addison Co.) until 6/28/99._

_As pointed out in the ruling of 6/3 on petition for reconsideration, the district court is a court of limited jurisdiction and cannot convene a "special proceeding" to determine these issues. Also, the Rutland District Court appears to be the_

| Presiding Judge | Assistant Judge | Assistant Judge | Date |
|---|---|---|---|

Date copies sent to:

Plaintiff/State   _Scott Huminski_

Defense   _7-1-99_

Other

_respondent. Thus, Mr. Huminski must pursue his claims in another forum that has jurisdiction_

Clerk's Initials _____

R2/87

IA 000161

**EXHIBIT 4**

## ENTRY ORDER

On June 1, 1999, Scott Huminski was served with a Notice Against Trespass issued by authority of Hon. Patricia Zimmerman and Rutland County Sheriff R.J. Elrick., as legal designees (attached as Ex. A). By its terms, the notice precluded Scott Huminski from entering or remaining on property administered by the designees. described as: all buildings and lands located at 92 State Street, Rutland, VT, to include "all lands and property under the control of the Supreme Court and the Commissioner of Buildings and General Services, including the Rutland District Court, parking areas and lands."

In connection with multiple proceedings pending in the Bennington Superior Court in which Scott Huminski is a party, he has asserted that the above-mentioned Notice Against Trespass precludes him from coming upon any property "under the control of the Supreme Court", which he interprets to include the Bennington Superior Courthouse, and any other state courthouse. Although the undersigned does not believe the Notice Against Trespass can be reasonably construed as broadly as feared by Mr. Huminski, in the exercise of the proper authority vested in the presiding judge of Bennington Superior Court, and in furtherance of the administration of justice, the Court will declare and publish its ruling that the Notice Against Trespass issued by authority of Judge Zimmerman has no legal effect over the buildings, lands and premises comprising the Bennington Superior Court, including the courthouse.

2

## CERTIFICATE OF SERVICE

I hereby certify that on this 2d day of February, 2001, copies of the foregoing Consolidated Memorandum of Law Supporting Plaintiff's Constitutional Claims were served by First-Class U.S. Mail, postage prepaid, to counsel of record, at the following addresses:

Douglas D. LeBrun, Esq.
Pietro Lynn, Esq.
Heather Thomas, Esq.
Dinse, Knapp & McAndrew, P.C.
P.O. Box 988
Burlington, VT  05402-0988

Nancy Sheahan, Esq.
McNeil, Leddy & Sheahan, PC
271 South Union Street
Burlington, VT  05401

Joseph Winn, Esq.
Vermont Attorney General's Office
Pavilion Office Building
109 State Street
Montpelier, VT  05609

Peter W. Hall, Esq.
Reiber, Kenlan, Schwiebert, Hall & Facey, P.C.
71 Allen Street
Rutland, VT  05702-0578

Ronald G. London, Esq.
HOGAN & HARTSON, L.L.P.

February 2, 2001